# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **CHARLES ANTHONY LHERAULT,** | § | |
| **TDCJ No. 1972430,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **SA-17-CA-0887-ESC** |
| | § | |
| **LORIE DAVIS, Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are *pro se* Petitioner Charles Anthony Lherault's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Petitioner's Memorandum in Support (ECF No. 16), Respondent's Answer (ECF No. 22), and Petitioner's Reply thereto (ECF No. 25). The parties have consented to the case proceeding before a United States Magistrate Judge in accordance with 28 U.S.C. § 636 (ECF Nos. 4, 6). Having reviewed the record and pleadings submitted by both parties, the undersigned concludes Petitioner is not entitled to federal habeas corpus relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

## I. Background

Petitioner was charged by indictment with (1) assault-family violence by choking or strangulation, enhanced by a prior conviction for assaulting a family member, and (2) continuous family violence, enhanced by a prior conviction for injury to child. ECF No. 23-5 at 12-13 (Indictment). Prior to trial, a competency hearing was held at which a jury determined Petitioner

was competent to stand trial. *Id*. at 60. Subsequently, on December 5, 2014, a separate jury convicted Petitioner of both counts alleged in the indictment and assessed punishment at twenty-six years of imprisonment for the first count and ten years of imprisonment for the second count, with the sentences to run concurrently. *Id*. at 136-39 (Judgments); *State v. Lherault*, No. 2013-CR-10281 (175th Dist. Ct., Bexar Cnty., Tex. Dec. 5, 2014).

Petitioner did not appeal his conviction and sentence. Instead, he appealed the trial court's finding of competence, arguing the jury's finding was against the great weight and preponderance of the evidence. ECF No. 23-15. On September 30, 2015, the Fourth Court of Appeals rejected Petitioner's argument and affirmed the trial court's competency determination in an unpublished opinion. ECF No. 23-3; *Lherault v. State*, No. 04-15-00018-CR, 2015 WL 5730333 (Tex. App.—San Antonio, Sept. 30, 2015, pet. ref'd). The Texas Court of Criminal Appeals then refused his petition for discretionary review. *Lherault v. State*, No. 1402-15 (Tex. Crim. App. Feb. 3, 2016).

On January 17, 2017, Petitioner filed a state habeas corpus application challenging the constitutionality of his state court conviction and sentence. ECF No. 23-21 at 5-27; *Ex parte Lherault*, No. 86,724-01 (Tex. Crim. App.). The state habeas application contained the following allegations: (1) Petitioner is actually innocent of the charges against him; (2) the complainant committed perjury when she filed a complaint against Petitioner; (3) the complainant gave a statement absolving Petitioner of all charges, but the statement was withheld by the prosecution; (4) the Bexar County Sheriff's Department committed prosecutorial misconduct by falsifying police reports and 911 calls in order to obtain a conviction; (5) the trial court abused its discretion by allowing the trial to continue despite learning that a police report was never written on one of the incidents in question; and (6) Petitioner was denied effective

assistance on direct appeal by counsel's failure to raise numerous points of error on his behalf. The state habeas application also raised several overlapping ineffective-assistance-of-trial-counsel (IATC) claims alleging that counsel failed to: (1) present a defense, develop a strategy, or present witnesses and exculpatory evidence on his behalf; (2) obtain and present the complainant's recanting statement; (3) investigate and present certain witnesses on his behalf; (4) adequately cross-examine the complainant as to the veracity of her 911 calls and subsequent recanting affidavit; (5) rebut the fabricated 911 calls and police reports; (6) provide any exculpatory evidence on his behalf; and (7) act as an advocate on his behalf by providing a defense, calling witnesses, and cross-examining the complainant.

Based on findings made by the trial court, the Texas Court of Criminal Appeals denied Petitioner's state habeas application without written order on August 16, 2017. ECF No. 23-20. A few weeks later, on September 5, 2017, Petitioner placed the instant federal habeas petition in the prison mail system, and later submitted a lengthy memorandum in support of the petition on January 25, 2018. ECF Nos. 1, 16. In the petition and supplemental memorandum, Petitioner raises the same allegations that were raised and rejected in his state habeas corpus proceedings.[1] On April 5, 2018, Respondent filed an answer to Petitioner's federal habeas petition, to which Petitioner responded on June 11, 2018. ECF Nos. 22, 25.

---

[1] Respondent contends Petitioner has included several new claims for relief in his federal petition in addition to those claims raised during his state habeas corpus proceedings, and argues these unexhausted claims are procedurally defaulted from federal habeas review. After a careful examination of Petitioner's federal petition and supplemental memorandum, however, it is clear Petitioner is raising the same allegations brought forth originally on state habeas review. ECF No. 1 at 6-11 (raising the exact same 13 allegations as raised during state habeas review); ECF No. 16 (providing additional briefing on those 13 claims for relief). The Court will therefore limit its review to those 13 claims only.

## II. <u>Standard of Review</u>

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under Section 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101

(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III. <u>Analysis</u>

**A.    <u>Actual Innocence</u> (Claim 1).**

In his first allegation, Petitioner contends he is actually innocent of "each and every charge and indictment against him in this cause." ECF No. 1 at 6. Petitioner bases this allegation on a multitude of perceived errors and constitutional violations that occurred both before and during his trial which, according to Petitioner, establish that no offense was committed against the complainant. In response, Respondent argues that Petitioner's assertion of actual innocence fails to state a claim upon which federal habeas relief may be granted and is alternatively without merit. Because the Court agrees that Petitioner's claim of actual innocence is not a cognizable federal habeas claim, the merits of the allegation need not be reached.

"Freestanding" claims of actual innocence, such as the allegation now before the Court, do not provide a valid basis for federal habeas relief. *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Herrera*, 506 U.S. at 399. Although the *Herrera* court left open the question of whether, in a capital case, "a truly persuasive demonstration of 'actual innocence' made after trial would . . . warrant habeas relief if there were no state avenue open to process such a claim," 506 U.S. at 417, the Fifth Circuit has

consistently rejected this theory.[2] *See Cantu v. Thaler*, 632 F.3d 157, 167 (5th Cir. 2011); *In re Swearingen*, 556 F.3d 344, 348 (5th Cir. 2009); *Graves v. Cockrell,* 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). Because the Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review, Petitioner's allegation must be rejected.

Alternatively, even if an actual-innocence claim could be the basis for federal relief, it would only be cognizable if there were no state procedure available for making the claim. *Herrera*, 506 U.S. at 417; *Graves v. Cockrell*, 351 F.3d at 151. Such is not the situation in Texas, where state procedures are available to raise claims in clemency proceedings or a state habeas petition. *See* Tex. Crim. Proc. Code art. 48.01 (West 2017); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998). Indeed, such an allegation was raised by Petitioner during his state habeas corpus proceedings and ultimately rejected by the Texas Court of Criminal Appeals. Thus, Petitioner's freestanding claim of actual innocence must be denied.

B.     **Prosecutorial Misconduct** (Claims 2-4).

Petitioner's next three allegations accuse the State of using unlawful methods calculated to produce a wrongful conviction. In Claim 2, Petitioner contends that the complainant in this case committed perjury and that the prosecution knowingly used the perjured testimony to obtain a conviction. In Claim 3, he asserts that the prosecution withheld exculpatory evidence, including a statement made by the complainant absolving Petitioner of all charges. In Claim 4, he asserts the Bexar County Sheriff's Department falsified police reports and 911 calls in order to obtain a conviction. Each of these allegations was raised and rejected during Petitioner's state habeas corpus proceeding. As discussed below, Petitioner fails to demonstrate the state court's

---

[2]     In later revisiting the issue of actual innocence, the Supreme Court declined to resolve the question of whether freestanding actual-innocence claims are to be recognized in federal habeas proceedings. *House v. Bell*, 547 U.S. 518, 555 (2006).

rejection of these claims was contrary to, or an unreasonable application of, Supreme Court precedent.

### 1.     Presenting False or Perjured Testimony

In *Napue v. Illinois*, 360 U.S. 264 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or allows false testimony to go uncorrected at trial.  *See also Giglio v. United States*, 405 U.S. 150 (1972).  A petitioner seeking to obtain relief on such a claim must show that (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001).  False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict.  *Giglio*, 405 U.S. at 153-54; *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Here, Petitioner states that the complainant committed perjury by filing a false complaint against him and then subsequently testifying falsely at trial, and argues the prosecution knowingly used these false statements to obtain a conviction.  Petitioner has offered no evidence to substantiate his claim of perjury—rather, he contends complainant lacked credibility due to, among other things, her "delusional" mental condition, her alleged drug use prior to testifying, the incoherence of her 911 calls, and the exaggeration of her injuries.  Petitioner's conclusory opinion as to the complainant's credibility or the veracity of her testimony, however, does not establish that her testimony was false or that the prosecution knew the testimony was false. *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony was

perjured); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (holding "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner is required to plead facts in support of his claims. "'Absent evidence in the record,'" the undersigned will not "'consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.'" *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (quoting *Ross*, 694 F.2d at 1011). Because Petitioner offers no facts or evidence to support his allegation of perjury, his claim is conclusory and is denied. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (stating a petitioner is not entitled to relief on the basis of a conclusory allegation).

Similarly, Petitioner's allegation that the Bexar County Sheriff's Department falsified police reports is unsupported and conclusory. Petitioner has offered no evidence to substantiate his allegations of fabricated police reports, much less demonstrate the prosecution knew the reports were false and presented them nonetheless. Instead, Petitioner provides only conclusory and self-serving accusations to support his prosecutorial misconduct claim, which are insufficient to support habeas relief. *See Miller*, 200 F.3d at 282. Consequently, federal habeas relief is denied, as Petitioner has not demonstrated the state court's rejection of his claims was either contrary to, or an unreasonable application of, clearly established federal law.

### 2. The Suppression of Evidence

Petitioner next contends the prosecution failed to disclose several exculpatory items, including unspecified police reports, witness lists, and a statement allegedly made by the complainant recanting her allegations and absolving Petitioner of all wrongdoing. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) that evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment. *Banks v. Dretke*, 540 U.S. 668, 691 (2004); *Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003).

Petitioner satisfies none of these requirements, as his allegations of suppressed evidence are conclusory, speculative, and unsupported in the record. Although he alludes to a variety of unspecified police reports and records he believes the prosecution withheld from the defense, Petitioner does not allege any facts to support or substantiate his claims. Such conclusory allegations do not entitle a petitioner to habeas corpus relief. *See Miller*, 200 F.3d at 282; *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000) ("Allegations that are merely 'conclusory' or are purely speculative cannot support a *Brady* claim."). Similarly, Petitioner presents no evidence demonstrating the existence of a recanting statement made by the complainant, much less that the prosecution was in possession of such a statement but failed to disclose it to the defense. In fact, the record in this case demonstrates the opposite. *See* ECF No. 23-8 at 34-35 (testimony of the complainant at trial indicating Petitioner had attempted to coerce her to recant but she refused); ECF No. 23-8 at 135, 148-50 (testimony of Detective Frank Stubbs stating no recant statement existed and explaining that a single reference to a "recant statement" on a police report was due to a typographical error); ECF No. 23-21 at 158-59 (affidavit from trial counsel indicating her belief that a recant statement did not exist).

Petitioner raised these *Brady* allegations during his state habeas proceedings and the state habeas court denied relief. Because he has not established a valid *Brady* violation, Petitioner

fails to demonstrate that the state court's rejection of his claim was either contrary to, or an unreasonable application of, clearly established federal law. Although Petitioner vehemently disagrees with this decision, Petitioner's general disagreements with the state court's determination is insufficient to meet his burden of proof under AEDPA. Accordingly, federal habeas relief is denied on this claim.

**C.     Trial Court Error (Claim 5).**

Petitioner next alleges the trial court abused its discretion by allowing his case to proceed to trial despite allegedly learning that a police report for one of the incidents in question did not actually exist. Although this claim is difficult to understand, Petitioner raised a similar claim during his state habeas proceeding which was rejected by the state court. Petitioner has not demonstrated that the state court's denial of relief was either contrary to, or an unreasonable application of, clearly established federal law. To start, Petitioner's allegation is conclusory, speculative, and unsupported by any evidence or facts; thus, habeas relief is unwarranted. *See Miller*, 200 F.3d at 282 (conclusory allegations do not entitle a petitioner to habeas relief). Furthermore, to warrant relief, the trial court error must do more than merely affect the verdict— it must render the trial as a whole fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984); *Nelson v. Estelle*, 642 F.2d 903, 907 (5th Cir. 1981). A trial court error renders a trial fundamentally unfair if there was a reasonable probability that the verdict would have been different absent the alleged error. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). Petitioner fails to make this showing. Accordingly, relief is denied.

**D.     The IATC Claims (Claims 6-12).**

Petitioner raises several overlapping IATC claims in his federal petition, each one having been raised and rejected during Petitioner's state habeas proceedings. Specifically, Petitioner

contends trial counsel failed to: (1) present a defense, develop a strategy, or present witnesses and evidence on his behalf; (2) present the complainant's recanting statement; (3) present certain witnesses; (4) adequately cross-examine the complainant; (5) rebut evidence against him; (6) provide any exculpatory evidence on his behalf; and (7) act as an advocate on his behalf.

In essence, Petitioner challenges three aspects of counsel's representation: (1) counsel's alleged failure to present an adequate defense and act as an advocate on his behalf; (2) counsel's alleged failure to present certain witnesses and evidence on his behalf; and (3) counsel's alleged failure to adequately cross-examine the complainant. As discussed below, Petitioner fails to demonstrate the state court's rejection of these challenges was contrary to, or an unreasonable application of, Supreme Court precedent. Federal habeas relief is therefore denied.

### 1.      The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense. 466 U.S. at 687-88, 690. According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22

(2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

## 2. Counsel's Defensive Strategy

Petitioner asserts counsel was ineffective for failing to have a strategy or act as an advocate on his behalf at any time during trial. According to Petitioner, counsel focused only on her unsuccessful attempt to have him found incompetent and refused to discuss defensive strategies with him, present the complainant's recant statement, or argue the prosecution's

evidence was fabricated. Petitioner believes counsel effectively "abandoned" him after attempting to have herself removed as counsel.

Petitioner raised these allegations during his state habeas proceedings. In response, trial counsel submitted an affidavit declaring, in relevant part:

GENERAL RESPONSES:

1.    I had a defense investigator appointed who I utilized to investigative possible defensive matters I deemed important and relevant. I conducted a reasonable investigation.

2.    I had a defense expert appointed on the issue of competency and possible mitigation who testified for the defense on competency.

3.    I continuously raised the issue competency and I had a jury trial on that issue. The jury found [Petitioner] competent to stand trial. See Competency Trial entire record and Appellate Brief in Cause 04-15-00018-CR which Appellate Attorney Michael Robbins attached to his response.

4.    I was requested to represent [Petitioner] on a contested civil hearing for Protective Order in Cause Number 2013 Cl19836. This gave me a unique opportunity to hear and observe Complainant and cross examine her well in advance of the criminal proceedings. It should be noted that the Complainant was a good witness in support of her Application and the Protective Order was granted.

5.    I explained the range of punishment and significance of deadly weapon finding to [Petitioner] and I advised [Petitioner] of the State's pretrial plea offer of 8 years TDC which [Petitioner] acknowledged he understood and declined. See RR 2 DB Volume 3, Page 5.

6.    [Petitioner] was under indictment in this cause and in a separate indictment under cause number 2014-CR-0860 involving the same Complainant on a different offense date—assault family choking/strangulation. It should be noted that I represented him in that cause and that case was dismissed after his conviction herein. It should also be noted that the indictment herein contained a repeater count.

7.    I filed numerous pretrial motions in both cases and obtained rulings in many instances as well as requested defense subpoenas all of which is a matter of record.

8.      On numerous occasions during the course of my representation I told
        [Petitioner] that he was giving me information that was not useable or was
        not relevant in my professional opinion and in most cases was not useable
        and not relevant.  He was obsessed with matters that did not relate to
        possible defensive issues in this case. In my opinion, there was no
        affirmative defense applicable under the Penal Code.

SPECIFIC RESPONSES:

2. A.   I deny that I failed to put forth any witness or evidence of [Petitioner]'s
        claims of fabrication.  The State put on a strong case and much evidence
        was corroborated.  I cross examined every state witness.

2. B.   I deny that I failed to present any kind of defense or advocate on behalf of
        [sic] client.  I admit that I did not put on evidence on guilt/innocence as, in
        my opinion, our best chance was to argue to reasonable doubt based on my
        cross examination of witnesses.   From my pretrial investigation and
        observations during trial, there was no meaningful direct defense evidence
        and no meaningful witness to present.

2. C.   I deny that I failed to obtain exculpatory evidence and I deny that I failed
        to obtain complainant's recantation statement.   There was no recant
        statement ever produced and I did not believe one actually existed.

        To explain, discovery was requested and extensive discovery had been
        provided by the State.   I carefully and extensively reviewed it.
        Additionally, the record reflects the testimony and discussion held
        regarding the issue of possible recant statement.   See Court Reporters
        Record RR 2 DP Volume 3 Page 131, Page 135, Page 139; Page 140, Page
        149, Page 154-156.   Based on my conversations with the District
        Attorney's Office, based on my extensive work on this matter and the
        related protective order, and based on the testimony and representations on
        the record, I did not believe a recant statement actually existed.
        Complainant did testify the [Petitioner] repeatedly asked her to write a
        letter saying she fell off a ladder which she refused to do.  RR 2 DP
        Volume 3 Page 34-35.  I was obligated to pursue the possible existence of
        a recant statement, which I did, before and during trial.

                                    * * *

2. G.   I deny that I failed to advocate on behalf of [Petitioner].  I admit that I
        filed a Motion to Withdraw as attorney.  For example, during the course of
        my representation [Petitioner] filed a grievance against me.  The State Bar
        informed me that it was dismissed.  I was not asked to respond.  Because
        of a concern for the potential for conflict, I filed a Motion to Withdraw
        which was heard and denied.  I was duty bound to continue to zealously

                                      14

represent my client which I did and I was not personally or professionally impacted in representing him by his filing of the grievance.

2. H.    I deny that I failed to discuss trial strategy with [Petitioner]. [Petitioner] would go into long diatribes about what he thought the trial strategies should be and I listened. He often would not stop long enough to let me talk. I found his theories and strategies to be of no actual strategic value, and to be groundless and irrelevant.

2. I.    I deny that I failed to discuss witnesses with [Petitioner] or discuss cross examination of witnesses with [Petitioner]. Most of [Petitioner]'s theories and questions would have elicited sustainable objections for irrelevancy and inadmissibility. I repeatedly articulated to [Petitioner] that I believed the State had good witnesses.

ECF No. 23-21 at 156-62. The state habeas trial court found that trial counsel was competent and her affidavit was truthful and credible. *Id*. at 163-71. These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. ECF No. 23-20.

Petitioner has not rebutted the state court's finding of fact with clear and convincing evidence, but instead offers only conclusory statements which are insufficient to support an IATC claim. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). Petitioner's conclusory allegations are not "clear and convincing evidence" sufficient to overcome the presumption of correctness attributed to the trial court's finding of counsel's credibility and competence. *See Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

Moreover, "counsel has wide latitude in deciding how best to represent a client. . . ." *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003). When deciding whether counsel's performance was deficient, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89. Counsel's strategic choices, made after a

thorough investigation of the law and facts relevant to plausible options, are virtually unchallengeable. *Id*. at 673; *Pape v. Thaler*, 645 F.3d 281, 289-90 (5th Cir. 2011). Counsel's performance cannot be considered deficient or prejudicial if counsel fails to raise a non-meritorious argument. *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007); *Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006).

Here, the record refutes Petitioner's assertions that counsel lacked a strategy and failed to advocate on his behalf. Based on her investigation and extensive knowledge of the case, counsel determined the best strategy was to thoroughly cross-examine the State's witnesses and argue reasonable doubt, which she did. Counsel also made an informed and strategic decision to not pursue Petitioner's defensive theories, including his belief that the complainant recanted, as these strategies were of no actual strategic value, groundless, and irrelevant. Petitioner has not shown that these decisions were unreasonable, much less that the state court's denial of this claim was an unreasonable application of *Strickland*. Thus, under the "doubly" deferential review encompassed by *Strickland* and the AEDPA, Petitioner's claim cannot survive. *See Richter*, 562 U.S at 105.

### 3.    Counsel's Failure to Present Witnesses and Evidence

Petitioner next alleges counsel was ineffective by failing to investigate and present witnesses on his behalf. Throughout his petition and memorandum, Petitioner also faults counsel for not discovering and presenting exculpatory evidence, including complainant's alleged recant statement, on his behalf. Similar to the previous allegation, trial counsel responded to these accusations in her state habeas affidavit:

<u>GENERAL RESPONSES</u>:

1.      I had a defense investigator appointed who I utilized to investigative possible defensive matters I deemed important and relevant. I conducted a reasonable investigation.

2.      I had a defense expert appointed on the issue of competency and possible mitigation who testified for the defense on competency.

* * *

7.      I filed numerous pretrial motions in both cases and obtained rulings in many instances as well as requested defense subpoenas all of which is a matter of record.

8.      On numerous occasions during the course of my representation I told [Petitioner] that he was giving me information that was not useable or was not relevant in my professional opinion and in most cases was not useable and not relevant. He was obsessed with matters that did not relate to possible defensive issues in this case. In my opinion, there was no affirmative defense applicable under the Penal Code.

<u>SPECIFIC RESPONSES</u>:

2. A.      I deny that I failed to put forth any witness or evidence of [Petitioner]'s claims of fabrication. The State put on a strong case and much evidence was corroborated. I cross examined every state witness.

2. B.      I deny that I failed to present any kind of defense or advocate on behalf of [sic] client. I admit that I did not put on evidence on guilt/innocence as, in my opinion, our best chance was to argue to reasonable doubt based on my cross examination of witnesses. From my pretrial investigation and observations during trial, there was no meaningful direct defense evidence and no meaningful witness to present.

2. C.      I deny that I failed to obtain exculpatory evidence and I deny that I failed to obtain complainant's recantation statement. There was no recant statement ever produced and I did not believe one actually existed.

      To explain, discovery was requested and extensive discovery had been provided by the State. I carefully and extensively reviewed it. Additionally, the record reflects the testimony and discussion held regarding the issue of possible recant statement. See Court Reporters Record RR 2 DP Volume 3 Page 131, Page 135, Page 139; Page 140, Page 149, Page 154-156. Based on my conversations with the District Attorney's Office, based on my extensive work on this matter and the

related protective order, and based on the testimony and representations on the record, I did not believe a recant statement actually existed. Complainant did testify the [Petitioner] repeatedly asked her to write a letter saying she fell off a ladder which she refused to do.  RR 2 DP Volume 3 Page 34-35.  I was obligated to pursue the possible existence of a recant statement, which I did, before and during trial.

2. D. and 2.E.  I deny that I failed to contact witnesses whom [Petitioner] claims could testify on behalf of [Petitioner] or to Complainant's credibility. [Petitioner] wanted me to contact people who had no direct knowledge of this case and were not relevant to any issue.  I and my investigator contacted or attempted to contact certain witnesses [Petitioner] gave us. Witnesses and matters which were pursued by myself or my investigator produced no relevant, helpful or meaningful witness.  Some knowledge I obtained by conversation or investigation contributed to my general knowledge of the case, which I believe is reflected throughout the trial record.

For example, [Petitioner] complains of a possible witness from A Action Bail Bonds which I think he believes goes to Complainant's credibility because she picked him up outside their office when he was released from jail.  I had my investigator go there and he found nothing relevant to this case.  Additionally, [Petitioner] admitted in trial under cross exam that she picked him up from the jail.  See RR 2 DP Volume 3 page 37 lines 17-18.

* * *

Other Possible Issues:

1.    [Petitioner] attaches approximately 17 pages of Grounds and Facts Supporting Grounds which are difficult to follow and repetitive.  I believe that State had a strong case.

2.    An issue I believe to be important to address is not filing of a sworn Motion for Continuance based on the unavailability of Dr. Jack Ferrell, Ph.D., forensic psychologist in punishment.  I had put Dr. Ferrell on the stand as defense expert in the competency trial where I felt he was extremely helpful in my efforts to persuade a jury that [Petitioner] was not competent, even though the jury found [Petitioner] competent.  However in terms of mitigation, I had great concern that his testimony may open him up to cross examination that would be very damaging on punishment. I felt strongly that the damage would outweigh any benefit to [Petitioner] and therefore I would not have put him on.

ECF No. 23-21 at 156-61.

The state habeas court found counsel's statement credible and the Texas Court of Criminal Appeals denied relief on the findings of the trial court. ECF No. 23-21 at 163-71; ECF No. 23-20. The state habeas court's factual determinations, including credibility findings and any finding that counsel's choices were strategic, are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

*Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). But in assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed in light of the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. To prevail on an IATC claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *Del Toro v. Quarterman*, 498 F.3d 486, 490-91 (5th Cir. 2007) (finding counsel's choice to not hire an expert reasonable under the circumstances).

In this case, the state habeas court's implied factual finding that counsel's investigation was adequate has not been rebutted with clear and convincing evidence. Although Petitioner gave counsel several witnesses to contact, a thorough investigation by counsel and her investigator produced no relevant or helpful witnesses. Based on her investigation and observations at trial, counsel also determined there was no meaningful direct defense evidence to

be presented on Petitioner's behalf. This includes the alleged recanting statement, which counsel does not believe exists. In addition, Petitioner has not alleged with any specificity what further investigation would have revealed or how it would have altered the outcome of the trial. *See Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). Petitioner also has not pointed to exculpatory evidence that trial counsel could have uncovered with additional investigation or proven that an undiscovered witness would have testified in his favor. *See Gregory v. Thaler*, 601 F.3d 347, 353 (5th Cir. 2010); *Day*, 566 F.3d at 538. As a result, Petitioner has not shown counsel's performance was deficient or that the state court's denial of this claim was an unreasonable application of *Strickland*.

###### 4.    Counsel's Cross-Examination of the Complainant

Petitioner faults counsel for failing to adequately cross-examine the complainant in this case. Specifically, Petitioner contends counsel should have impeached complainant's testimony by questioning: (1) her mental capacity; (2) the veracity of her 911 calls; (3) whether she recanted her statements to police in another statement; and (4) the veracity of an affidavit in which she claims to have never picked Petitioner up at A Action Bond Company after his arrest. Trial counsel responded to these claims in her affidavit to the state habeas trial court, stating:

> 2. C.    I deny that I failed to obtain exculpatory evidence and I deny that I failed to obtain complainant's recantation statement. There was no recant statement ever produced and I did not believe one actually existed.

> 2. D. and 2.E. . . . [Petitioner] complains of a possible witness from A Action Bail Bonds which I think he believes goes to Complainant's credibility because she picked him up outside their office when he was released from jail. I had my investigator go there and he found nothing relevant to this case. Additionally, [Petitioner] admitted in trial under cross exam that she picked him up from the jail. See RR 2 DP Volume 3 page 37 lines 17-18.

> 2. F.    I deny that I did not cross examine Complainant. I deny that I did not seek to call into question the Complainant's credibility. I cross examined Complainant. She was a good witness for the State.

I admit that I did not go into the 911 calls in any way as they were, in my opinion, completely inculpatory. Those calls were dramatically unfavorable to [Petitioner]. I do not know what [Petitioner] is talking about when he refers to "fabricated affidavits made by the complainant".

* * *

2. H. I deny that I failed to discuss trial strategy with [Petitioner]. [Petitioner] would go into long diatribes about what he thought the trial strategies should be and I listened. He often would not stop long enough to let me talk. I found his theories and strategies to be of no actual strategic value, and to be groundless and irrelevant.

ECF No. 23-21 at 156-61.

The state habeas trial court found counsel's statements credible and concluded counsel's performance was not deficient, and the Texas Court of Criminal Appeals denied relief on this claim on the findings of the trial court. ECF No. 23-21 at 163-71; ECF No. 23-20. The state habeas court's factual determinations, including credibility findings, are entitled to a presumption of correctness. *Richards v. Quarterman*, 566 F.3d 553, 563-64 (5th Cir. 2009).

Here, the state habeas court's implied factual finding that counsel's cross-examination of the complainant was adequate has not been rebutted with clear and convincing evidence. Indeed, a thorough review of the trial transcript indicates counsel provided effective cross-examination on several issues, including the complainant's credibility concerning the above issues. Furthermore, Petitioner has not shown that counsel's strategic decision not to discuss the alleged recanting statement or the complainant's 911 calls was unreasonable. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Because counsel's decisions regarding cross-examination were strategic and imminently reasonable, they "will not support an ineffective assistance claim." *United States v. Bernard*, 762 F.3d 467, 472 (5th Cir.

2014) (citation omitted).  As a result, Petitioner has not shown counsel's performance was deficient.  The state court's denial of this claim, therefore, was not an unreasonable application of *Strickland*.

###        5.        Lack of Prejudice

Finally, even if Petitioner could establish that counsel's performance in this case constituted deficient performance, he still fails to demonstrate that the alleged errors were prejudicial to his defense.  Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury."  *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner has not established that the alleged error was prejudicial with regard to his guilt because, as the record demonstrates, the State's case was strong and there was substantial corroborated evidence against Petitioner.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (noting the weight of the evidence of guilt in finding alleged deficient performance of counsel not prejudicial); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008).  With regard to his punishment, Petitioner also has not established prejudice given the nature of Petitioner's offense and the fact that he received only 26 years in the face of a life sentence.

Because Petitioner is unable to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged errors, the state court's denial of Petitioner's IATC allegations was not an unreasonable application of *Strickland*.  Relief on these claims is therefore denied.

E.    **Appellate Counsel** (Claim 13).

In his final allegation, Petitioner contends he received ineffective assistance of counsel during his direct appeal proceedings.  A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law.  *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  The familiar standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013).  Thus, to obtain relief, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different.  *See Robbins*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015).  He does neither.

Petitioner contends appellate counsel was ineffective for failing to raise any of the numerous points of error raised in the instant federal habeas proceeding.  As discussed above, however, none of these allegations raised in his federal habeas petition have merit.  Appellate counsel is not required to raise every possible non-frivolous claim on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").

Because none of the claims Petitioner contends should have been raised are meritorious, appellate counsel was not deficient for failing to raise them.  For the same reason, there is no likelihood Petitioner would have obtained relief had they been raised on direct appeal, and

therefore no prejudice was caused by appellate counsel's failure to raise them. Petitioner's allegation concerning appellate counsel was rejected by the state court during his state habeas proceedings, and Petitioner has not shown this rejection on the merits to be contrary to, or an unreasonable application of, the *Strickland* standard. *See Richter*, 562 U.S. at 101. Federal habeas relief is therefore denied.

## IV.  Certificate of Appealability

The undersigned must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the undersigned concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V.  Conclusion and Order

Petitioner fails to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas corpus proceedings was either (1) contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial, appellate, and habeas corpus proceedings. As a result, Petitioner's federal habeas corpus petition does not warrant relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Charles Anthony Lherault's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED this the 16th day of January, 2019**.

**ELIZABETH S. ("BETSY") CHESTNEY**
**U.S. MAGISTRATE JUDGE**